**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11-CR-484 |
| | ) | |
| v. | ) | Judge Joan Gottschall |
| | ) | |
| KAWANI WILLIAMS, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Mr. Williams has been charged in a two-count indictment with distribution of ecstasy, in violation of 21 U.S.C.§ 841(a)(1), and possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). Pursuant to § 841(a)(1), Count One carries, among other things, a maximum sentence of ten years' imprisonment, which triggers a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *See* 18 U.S.C.§3142(e)(3)(A). The Government has moved to detain the defendant.

**A.**

Under the Bail Reform Act, there is a rebuttable presumption that in cases involving certain specified, serious offenses there is no set of conditions that will reasonably assure the appearance of the defendant at trial or the safety of the community. The crimes charged in this case fall within that classification. *See* 18 U.S.C. §§3142(e) and (f)(1)(A) –(E). To rebut the presumption, all that is required is the defendant present some evidence to the contrary. *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990); *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The ultimate burden of proof of risk of flight and danger to the community is the government's.

The Bail Reform Act's preference for liberty – a preference that is consistent with and demanded by our entire heritage – ensures that pretrial detention will occur only in the rarest of circumstances. *Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996). As the Supreme Court has stressed, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, 18 U.S.C. § 3142(a) and (b) require that a person charged with an offense shall be released on personal recognizance or upon execution of an unsecured appearance bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community.

The preference for release accounts for the requirement that the judge consider the possibility of less restrictive alternatives to detention. *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991)(Posner, J.). *See also United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Wilbon*, 54 F.3d 788 (10th Cir. 1995); *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997)(collecting cases).

Thus, merely because Mr. Williams is charged with an offense involving drugs and guns, does not mean that, as a matter of law, bond cannot be granted. *Salerno*, 481 U.S. at 750. Indeed, there are cases involving crimes of violence or drug trafficking where bond either has been granted or where the court made clear that bond was at least a theoretical possibility. *See Infelise*, 934 F.2d at 105; *United States v. Leonti*, 326 F.3d 1111, 1114 (9th Cir. 2003); *United States v. O'Dell*, 204 F.3d 829 (8th Cir. 2000); *United States v. Gigantei*, 39 F.3d 42, 48 (2nd Cir. 1994); *United States v. Mancuso*, 726 F.Supp. 1210, 1214 (D.Nev. 1989). In *United States v. Ploof*, 851 F.2d 7, 11-12 (1st Cir. 1988), the First Circuit stressed that even where there was serious risk of obstruction,

intimidation, threat, or death to prospective witness, detention still requires showing that no set of conditions will "*reasonably* assure" safety. (Emphasis in original).

Given the discretionary nature of bond decisions, cases can be found to support or deny bond in any almost any situation. Indeed, on the same set of facts, two decision makers can arrive at opposite decisions and either may be deemed an appropriate exercise of discretion. *United States. v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008). Since decisions under the Bail Reform Act are discretionary, there must be a consideration of the factors relevant to that exercise, *cf., United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). The factors that inform bond decisions are: the nature of the circumstances of the offence charged, the weight of the evidence, the history and characteristics of the person, including whether at the time of the current offense the person was on other release pending trial under federal, state or local law, the person's family ties, length of residence in the community, appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §1342(g)(1)-(4).[1]

The Bail Reform Act does not require the government to show with certainty that a particular defendant poses a risk of flight or danger to the community. It recognizes that to some extent bond decisions are exercises in uncertain prophesy. But at the same time the Act is properly premised on the theory that there is nothing inherently unattainable about a prediction of future criminal conduct, and the fact-intensive assessment of all relevant factors and the various safeguards under the Act

---

[1] The nature and circumstances of the offense and the history and characteristics of the defendant were also factors under the sentencing guidelines. These and the other factors under 18 U.S.C. §3553(a) have been described by the Seventh Circuit as "intangibles, 'weighable' only in a metaphorical sense, that the sentencing judge is in a better position than the appellate judges to place them in the balance with competing considerations." *United States v. Gammicchia*, 498 F.3d 467, 469 (7th Cir. 2007).

are specifically designed to further the accuracy of that determination. *Salerno*, 481 U.S. at 751. It is significant that even the defendant in *Salerno* who had contended that the Bail Reform Act impermissibly allowing detention based on predictions of future dangerousness, conceded that an arrestee may be incarcerated until trial if he presents a danger to witnesses (or a risk of flight). 481 U.S. at 749.[2]

**B.**

After conducting a detention hearing as required by §3142(f), and upon consideration of the evidence proffered by the government and the defendant, which included the testimony of the defendant's wife, Tatiana Plummer, and the contents of the reports prepared by the United States Pretrial Services Office ("PTSO Report"), I find that the government has proven, by clear and convincing evidence,[3] that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the defendant is released. With respect to each of the statutory factors enumerated in §3142(g), I find:

> (a) <u>Nature and Circumstances of the Offense</u>: The nature and circumstances of the offenses with which the defendant is charged includes an alleged series of narcotics and firearms transactions conducted out of, among other places, the defendant's residence. Section 3142(g)(1) explicitly lists, and this Court finds, that offenses involving controlled substances and firearms are very serious offenses. Thus, the nature of the charged offenses

---

[2] So too did the Second Circuit, which had ruled in Salerno's favor.

[3] The Supreme Court has defined the clear and convincing standard of proof as evidence which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 285 (1990) (internal quotations omitted).

4

weighs in favor of detention.

(b) <u>Weight of the Evidence</u>: While all defendants are presumed innocent, that presumption obviously does not render unnecessary an analysis of the factors prescribed to §3142, or bond would necessarily be granted in all cases. The government's proffer has shown the weight of the evidence against the defendant to be quite strong. In addition to an incriminating post-arrest statement, the evidence includes multiple video and audio recordings of undercover purchases of narcotics and firearms with the defendant. The audio recordings include several conversations in which the defendant allegedly makes statements evidencing his knowing and willing involvement in the sale of multiple firearms.

(c) <u>Defendant's History and Characteristics</u>: The defendant has two prior felony convictions: one for aggravated battery of a police officer in August 2000, and one for aggravated unlawful use of a firearm in June 2002. While these convictions occurred some time ago, they are both serious offenses. Defendant's August 2000 conviction involved the use of force against a law enforcement officer, and his 2002 conviction involved his possession of a loaded firearm.

According to the government's proffer, following defendant's arrest for the instant offense, he admitted to brokering the sale of fifteen firearms within a four month period–January 2011 to April 2011. Defendant said that he received the majority of these firearms from his weapons source and received two shotguns from kids in his neighborhood. According to defendant, his firearms source sought defendant's assistance in selling these firearms because defendant knew a lot of "people on the street" who might be interested in purchasing such weapons. Defendant also stated that he was a former gang member and still

5

maintains relationships with known gang members.

Defendant is currently unemployed and has been unemployed for two years preceding his arrest in the instant case. According to defendant, he has been making a living selling drugs, including ecstasy and crack cocaine. While defendant maintains that his arrest in the instant case has "burned" him, thereby ensuring that no one will buy guns or drugs from hm if released, the risk is still present, and given the circumstances of the case, there is insufficient assurance the defendant would not at least attempt to return to his consistent pattern of selling narcotics and firearms. After all, as the defendant admitted following his arrest, he has been unemployed for two years and during that time, made a living selling drugs and guns.

Defendant is married with a one-year old son. Defendant's wife testified, under oath, that if defendant is released he can live with her and their son. Defendant's wife also testified that she works nights, from approximately 11:30 p.m. to 6:00 a.m. at the United States Post Office, but that she will do her best to watch the defendant and make sure he complies with whatever conditions of release this Court imposes. The problem is that defendant allegedly sold both drugs and guns from the residence he shared with his wife and his one-year old son prior to his arrest in the instant case. Moreover, as hard as defendant's wife might try to watch the defendant, she cannot watch him while she is at work, and defendant cannot be left unsupervised during the extended period that she will be at work.

(d) Defendant proposed that his mother spend the night at defendant's residence while defendant's wife is at work to cure the problem of defendant being left alone; however, according to defendant, defendant's mother works during the day, which

6

means that she must sleep at night.  If defendant's mother is sleeping while at defendant's residence, she will be unable to effectively watch defendant.

  (e) Mr. Williams' spouse was wiling to post a case bond of $1,000, which is a significant sum to the parties given their circumstances.  But it is not so great in the broader scheme of things that a defendant would fee inhibited from breaching the conditions of bond if it was otherwise in his interest.  For example, in this case, the amount of money to be made from a single illicit transaction of the kind the defendant has been charged with and which he has been involved with in the past, is so much greater than the amount the defendant's wife is able to post as bond that loss of the $1,000 bond is not a sufficient deterrent.

  (f) Mr. Williams' counsel also attributes significance to the fact that Mr. Williams, at the time of his arrest in July 2011, told the agents that he had not sold drugs or transferred guns since April.  The argument, apparently, is that Mr. Williams, having voluntarily ceased this activity some months before his arrest would not return to it.  With all deference, the argument assumes the truthfulness of Mr. Williams' statements.  This is not to say that Mr. Williams may not have told the agents the truth.  It is simply to say that there is no evidence that he did and "under a realistic appraisal of psychological tendencies and human weakness," *Withrow v. Larkin,* 421 U.S. 35, 47 (1975), there is every reason to doubt the exculpatory statements of a defendant made after an arrest.

  (g) Finally, the defendant finds it significant that he worked for nine years before becoming unemployed approximately two years ago.  That is a factor to be weighed in the balance, but it is not sufficient to overcome the government's showing.  Indeed, more pertinent and persuasive is the fact that for the past two years of Mr. Williams'

7

unemployment, he has made a living selling guns and drugs.

In sum, I find that clear and convincing evidence has been adduced by the government establishing that no condition or combination of release conditions will reasonably assure the safety of other persons and the community.

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 3142(e), that defendant, KAWANI WILLIAMS, shall remain in custody until further order of court.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** October 25, 2011